■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JONATHAN GONZALEZ, Appellant. [870 NYS2d 529]—

---

Defendant was arrested after he approached a confidential informant, who was fitted with a wire as part of an investigation being conducted by the City of Schenectady Police Department, and asked, "what do you need? I can get you whatever you need." He was transported to the police station, where he was required to remove his clothes. He was then repeatedly ordered to bend over and spread the cheeks of his buttocks. Defendant eventually complied and police investigators spotted a small plastic bag, later determined to contain cocaine, protruding out of his rectum.

Defendant was charged in an indictment with criminal possession of a controlled substance in the third degree, attempted criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. Following a suppression hearing, County Court (Drago, J.) concluded that the drugs discovered during the visual body cavity search of defendant were admissible. The matter proceeded to trial, at the close of which defendant was convicted of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. He was subsequently sentenced to an aggregate term of 2½ years in prison to be followed by two years of postrelease supervision. Defendant appeals, and we now reverse.

"[A] strip search must be founded on a reasonable suspicion that the arrestee is concealing evidence underneath clothing" and, "[t]o advance to the next level required for a visual cavity inspection, the police must have a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity" (*People v Hall*, 10 NY3d 303, 310-311 [2008], *cert denied* 555 US —, 129 S Ct 159 [2008]). Particularly relevant here, "visual cavity inspections . . . cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to [this] procedure[ ]" (*id.* at 311). Rather, "[t]here must be particular, individualized facts known to the police that justify subjecting an arrestee to [a visual cavity inspection]" (*id.*).

In our view, and assuming without deciding that the strip search itself was founded on a reasonable suspicion, there was no specific, articulable factual basis supporting a reasonable suspicion for conducting the visual cavity inspection here. Although defendant's statements to the informant may have been indicative of his involvement in the drug trade, his representation that he could "get you whatever you need" was vague as to whether he actually possessed narcotics at the time and did not provide a specific, articulable basis to prompt the visual cavity inspection. Inasmuch as a review of the record reveals no evidence—beyond defendant's statement that he could get the confidential informant what she needed—to lead the police to reasonably suspect that evidence was concealed in a body cavity (*cf. id.* at 312; *People v Clayton,* 57 AD3d 557, 558 [2008]), the police were not justified in conducting a visual cavity inspection of defendant, and the evidence related to the inspection should have been suppressed.

Carpinello, Rose, Kane and Malone Jr., JJ., concur. Ordered that the judgment is reversed, on the law, motion to suppress granted, and matter remitted to the County Court of Schenectady County for further proceedings not inconsistent with this Court's decision.